UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CRIMINAL ACTION NO. 5:24-CR-71-S-DCR-MAS-3

UNITED STATES OF AMERICA                                    PLAINTIFF

V.                          **PLEA AGREEMENT**

JOSE LUIS TALAVERA-LEON                                     DEFENDANT

\* \* \* \* \*

1. Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter a guilty plea to Count 1 of the superseding indictment. Count 1 charges conspiracy to distribute 5 kilograms or more of cocaine in violation of 21 U.S.C. § 846. The Defendant also agrees to forfeiture as outlined in the forfeiture allegation of the superseding indictment. Pursuant to Rule 11(c)(1)(A), the United States will move at sentencing to dismiss the original indictment as to this Defendant.

2. The essential elements of Count 1 are as follows:

   (a) First, that two or more persons conspired, or agreed, to distribute cocaine, a Schedule II controlled substance.

   (b) Second, that the Defendant knowingly and voluntarily joined the conspiracy.

1

    (c) Third, that the amount of cocaine attributable to the Defendant as a result of his own conduct, or the conduct of others reasonably foreseeable to him, was at least 5 kilograms.

3. As to Count 1, the United States could prove the following facts that establish the essential elements of the offense beyond a reasonable doubt, and the Defendant admits these facts:

    (a) In February 2024, the Defendant, Jose TALAVERA-Leon, agreed with at least one other person to distribute kilogram quantities of cocaine, a Schedule II controlled substance. TALAVERA-Leon received drugs from codefendants Alejandro Galvan Gomez and Fayion Harris. Galvan Gomez was the owner of G and G Transportation, a trucking company that was headquartered in Lexington, KY. Harris was one of Galvan Gomez's employees, who was also involved in drug trafficking with him. Galvan Gomez used the trucking company, and its semi-trucks, to travel to the southern border of the United States at McAllen, Texas, to pick up drug loads. The modus operandi of the Galvan Gomez DTO included concealment of kilograms of cocaine in large vehicle batteries. Each battery was hollowed out to allow the concealment of 4 kilograms of cocaine. To evade detection by law enforcement, the batteries contained a small battery within the modified version so that the battery would still produce a charge if tested.

    (b) On February 9, 2024, DEA agents were utilizing judicial tracking warrants for phones belonging to Galvan Gomez and Harris. Agents also had a tracking warrant for Galvan Gomez's white 2016 Volvo semi-truck. The tracking data for phones and the truck showed that Galvan Gomez and Harris traveled to McAllen, Texas, and returned to Lexington on February 13, 2024.

    (c) On February 13, 2024, agents were conducting surveillance at G and G Transportation. At approximately 11:30 a.m., Harris arrived in her Nissan Murano. Agents watched as Galvan Gomez offloaded items from the semi-truck to Harris' Nissan Murano. Galvan Gomez and Harris departed in the Murano. Agents followed them to Cincinnati, OH, where they met with TALAVERA-Leon in a Dollar Store parking lot. TALAVERA-Leon was driving a rental vehicle, a 2023 Toyota Camry. Agents observed Galvan Gomez transfer four large batteries from the trunk of the Nissan Murano to the

trunk of the Toyota Camry. Ohio State Police conduct a traffic stop of the Camry. TALAVERA-Leon was the operator of the vehicle and there were no passengers. A drug dog was brought to the scene, and he alerted to the odor of narcotics from the vehicle. Officers located four car batteries in the trunk. Each battery contained four kilograms of cocaine. Lab testing proved that it was 16.01 kilograms of cocaine. TALAVERA-Leon admits that he possessed the cocaine with the intent to distribute it to another, or to others. TALAVERA-Leon agrees that the drug quantity attributable to him is 16 kilograms of cocaine.

4. The statutory punishment for Count 1 is imprisonment for not less than 10 years nor more than life imprisonment, a fine of not more than $10,000,000, and a term of supervised release of not less than 5 years. A mandatory special assessment of $100 per count applies, and the Defendant will pay this $100 assessment to the U.S. District Court Clerk at the time of the sentencing hearing.

5. Pursuant to Rule 11(c)(1)(B), the United States and the Defendant recommend the following sentencing guidelines calculations, and they may object to or argue in favor of other calculations. This recommendation does not bind the Court.

    (a) United States Sentencing Guidelines (U.S.S.G.), November 1, 2024, Manual, will determine the Defendant's guidelines range.

    (b) Pursuant to U.S.S.G. § 1B1.3, the Defendant's relevant conduct includes all the facts set forth in paragraph three and the provided discovery materials.

    (c) Pursuant to U.S.S.G. § 2D1.1(a)(5) and (c)(4), the base offense level for Count 1 is 32 based upon a drug weight of at least 15 kilograms but less than 50 kilograms of cocaine.

    (d) Pursuant to U.S.S.G. § 4C1.1(a), decrease the offense level by 2 levels because the Defendant meets all the criteria for a zero-point offender.

(e) If the Defendant meets all the criteria at U.S.S.G. § 5C1.2(1)-(5), then he will be eligible for a 2-level reduction to the offense level pursuant to U.S.S.G. § 2D1.1(b)(18).

(f) Pursuant to U.S.S.G. § 3E1.1(a) and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level pursuant to U.S.S.G. § 3E1.1(b) based on the Defendant's timely notice of intent to plead guilty.

6. No agreement exists about the Defendant's criminal history category pursuant to U.S.S.G. Chapter 4.

7. The Defendant waives the right to file a departure motion pursuant to U.S.S.G. Chapter 5, Parts H or K.

8. The Defendant waives the right to appeal the guilty plea and conviction. The Defendant reserves the right to appeal any aspect of the sentence imposed. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

9. The Defendant consents to the forfeiture to the United States, by administrative or judicial proceedings, of all right, title, and interest in the items listed in the forfeiture allegation of the superseding indictment. The Defendant agrees that this property is subject to forfeiture because a nexus exists between the property and the offenses to which he is pleading guilty, as set forth in the forfeiture allegation of the superseding indictment. The Defendant consents to the entry of a Preliminary Order of Forfeiture, pursuant to Federal Rule of Criminal Procedure 32.2, and agrees to take any steps necessary to assist the

government in effectuating the surrender and forfeiture of the assets identified herein, including, but not limited to, executing any documents necessary for the surrender and transfer of title to the United States. The Defendant agrees not to file a claim or petition seeking remission or otherwise contesting the forfeiture of the assets identified herein in any administrative or judicial proceeding, or to assist any other person or entity with doing so, and agrees to withdraw, and hereby withdraws, any such claim or petition that he already has submitted. If the Defendant fails to surrender and forfeit the assets identified for forfeiture herein, he consents to the forfeiture of any other property of his up to the amount of the value of the assets identified for forfeiture, pursuant to 21 U.S.C. § 853(p), and further agrees that the conditions of 21 U.S.C. § 853(p)(1)(A)-(E) have been met. The Defendant voluntarily and knowingly waives all provisions in Rule 32.2 pertaining to notice and/or the timing of forfeiture orders. The Defendant also waives his right, if any, to a jury trial on forfeiture and all constitutional, legal, or equitable defenses to the forfeiture. The Defendant agrees that this forfeiture is separate and distinct from any restitution, fine, or penalty ordered by the Court and shall survive bankruptcy.

     10. The Defendant abandons any interest in, and consents to the official use, destruction, or other disposition of, any item obtained by any law enforcement agency during the course of the investigation, unless an item is specifically provided for in another provision of this Agreement. The Defendant also waives any notice of a proceeding to implement the official use, destruction, or other disposition of any item abandoned under this paragraph.

5

11. The Defendant agrees to cooperate fully with the United States Attorney's Office and will make a full and complete financial disclosure. Within 30 days from his guilty plea, the Defendant agrees to complete and sign a financial disclosure statement or affidavit disclosing all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea agreement. The Defendant will submit to an examination, which may be taken under oath and may include a polygraph examination. The Defendant will not encumber, transfer, or dispose of any monies, property, or assets under the Defendant's custody or control without written approval from the United States Attorney's Office. If the Defendant is ever incarcerated in connection with this case, the Defendant will participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments. If the Defendant fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may argue that the Defendant should not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

12. The Defendant understands and agrees that, pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court

PAUL C. McCAFFREY
ACTING UNITED STATES ATTORNEY

Date: 9/5/2025    By: *G. Todd Bradbury* (signature)
G. Todd Bradbury
Assistant United States Attorney

Date: 9/05/2025    *Jose Talavera* (signature)
Jose Talavera-Leon
Defendant

Date: 9/5/2025    *Kathryn Walton* (signature)
Kathryn A. Walton
Attorney for Defendant